Charles R. KESTER, et al., Appellants,

v.

Constance HORNER, Director, Office of Personnel Management *, Appellee.

Appeal No. 85–884.

United States Court of Appeals, Federal Circuit.

Nov. 21, 1985.

* Constance Horner has succeeded Donald J. Devine as Director of OPM.

David M. Robinson, Robinson & Ferrara, of Honolulu, Hawaii, argued for appellants.

Stephen J. McHale, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellee. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., Anthony J. Steinmeyer and Richard Greenberg, Washington, D.C.

Before BALDWIN and KASHIWA, Circuit Judges and MILLER,** Senior Circuit Judge.

KASHIWA, Circuit Judge.

Appellants, Charles D. Kester, et al., appeal from the final judgment of the United

---

** Judge Miller assumed senior status effective June 6, 1985, but was on active status when this case was submitted.

States District Court for the District of Hawaii, Judge Samuel P. King presiding, reported at 545 F.Supp. 356, dismissing Counts II, III, IV and VII of Appellant's Third Amended Complaint. We affirm.

## I. BACKGROUND

In 1948, President Truman issued Executive Order 10,000 (E.O. 10,000 or Order), establishing the cost of living allowance (COLA) system for federal employees. Under this system, federal employees living outside the continental United States in locales having a substantially higher cost-of-living index than the District of Columbia, are entitled to a cost of living allowance in addition to their base pay. The Order directed that the Civil Service Commission (CSC)[1] periodically, but at least annually, determine the comparative cost of living in the District of Columbia with designated COLA areas and establish appropriate COLA rates commensurate with higher living costs in those areas. E.O. No. 10,000, §§ 205, 210, 3 C.F.R. §§ 795, 796 (1943–1948 Compilation). The Order further provided that the Commission:

> [I]n fixing the Territorial cost-of-living allowance ... make appropriate deductions when quarters or subsistence, commissary or other purchasing privileges are furnished at a cost substantially lower than the prevailing local cost.

*Id.* § 205(b)(2).

In 1976, the Commission issued new regulations, effective as of December 5, 1976, which interpreted the words "are furnished" within the meaning of § 205(b)(2) to mean furnished by any source in the federal government. 41 Fed.Reg. 51,579 *et seq.* (1976). As a consequence, COLA rates applicable to federal employees in Hawaii who were receiving living quarters, commissary privileges, or other such lower cost benefits were decreased.[2]

Appellants filed this class action seeking restoration of all COLA benefits withheld as a consequence of the aforementioned regulations. The class is composed of federal government employees on the islands of Oahu and Kauai, who are entitled to commissary and exchange (C & E) privileges for reasons independent of their present federal employment but whose COLA was reduced or eliminated as a result of the passage of the 1976 regulations.

In 1979, the district court, Samuel P. King, Chief Judge, granted summary judgment for Appellants on Count I of their Complaint holding that the Commission's 1976 regulations provided an unreasonable interpretation of the "are furnished" phrase because (1) the language of E.O. 10,000 did not compel this construction, and (2) the new interpretation was inconsistent with that historically given the Executive Order. *Kester v. Campbell,* 467 F.Supp. 913, 915 (D.Hawaii 1979). The United States Court of Appeals for the Ninth Circuit reversed and remanded, holding that the regulation providing for reduction of cost-of-living allowance to federal employees who enjoyed commissary or exchange privileges for reasons independent of their present federal employment was reasonable and not inconsistent with the language of the executive order creating the cost-of-living allowance. *Kester v. Campbell,* 652 F.2d 13, 16 (9th Cir.1981). On remand from the Ninth Circuit, Appellants argued other theories of recovery contained in their Complaint, unresolved by the district court judge's grant of summary judgment.

---

1. The Commission has been succeeded, for relevant purposes, by the Office of Personnel Management (OPM). *See* Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978).

2. On June 30, 1978 President Carter issued Executive Order No. 12,070, 43 Fed.Reg. 28,977 (1978), effective July 30, 1978, which suspended the requirement of Section 205(b)(2) of E.O. 10,000 except to the extent that quarters, subsistence, commissary and other purchasing privileges are furnished as a function of federal civilian employment. Consequently, Appellants seek restoration of COLA benefits withheld from December 5, 1970 to July 30, 1978.

Appellants argued that the Executive Order violated 5 U.S.C. § 5941, the enabling legislation for COLA, because section 205(b)(2) of the Order failed to guarantee them economic parity with their Washington counterparts who also have access to special purchasing privileges. Appellants further claimed that providing a reduced COLA to federal employees as a result of their receipt of special purchasing privileges, unrelated to their federal civilian employment, was so irrational as to violate the equal protection guarantee of the Fifth Amendment. The district court rejected both contentions. As to the statutory interpretation claim, the Court found that "COLA is meant to compensate employees who face living costs substantially higher than in the District of Columbia. The enabling statute gives the President broad discretionary powers in determining COLA rates and allowances. However, it does not mandate equality in effective compensation." *Kester v. Devine*, 545 F.Supp. 356, 358 (D.Hawaii 1982). In regard to the equal protection claim, the court held that, because "COLA rates are based upon differences in living costs faced by federal employees" and "plaintiffs [who have C & E privileges] face lower living costs than other federal employees in the same area," the classification rested upon a rational basis that was sufficient to pass constitutional scrutiny. *Id.*

Subsequently, the defendants moved to dismiss Counts II (Interference with Contract), III (Violation of Separation of Powers Doctrine), and V (Violation of Procedural Due Process) of the Complaint. Appellants responded by seeking reconsideration of the Court's prior ruling on Count VII (Violation of the Enabling Legislation) and summary judgment as to Counts II and III on the ground that the statutory term "classes of employees" precludes any distinctions in COLA rate predicated upon need, and instead, mandates that only job related criteria be employed in setting COLA rates.

Following briefing and argument on the pending motions, the district court dismissed the remaining counts of the Complaint. Final judgment for the defendants was entered on January 24, 1984, and it is from that judgment that this appeal is taken. Appellants challenge the district court's judgment with respect to Count II, Count III, Count IV (Violation of Equal Protection) and Count VII. The jurisdiction of the district court was based on the Tucker Act, 28 U.S.C. §§ 1346(a)(2) (1982). Jurisdiction in this court is conferred by 28 U.S.C. § 1295(a)(2) (1982).

## II. DISCUSSION

On appeal, Appellants argue that there is no grant of authority, express or implied, in 5 U.S.C. § 5941 which gives the Executive Branch or any of its agencies, the authority to deprive them of their COLA by creating a class of employees based upon receipt of commissary and exchange privileges for reasons independent of and unrelated to their federal employment. Appellants contend that the government's action in eliminating their COLA violates 5 U.S.C. § 5941 in that it eliminated congressionally mandated parity between themselves and their Washington, D.C. counterparts. Appellants also argue that the actions of CSC/OPM are a violation of the Separation of Powers Doctrine, in that there has been no proper, effective delegation of power from Congress to the Executive Branch, to undertake the actions in question and that the actions of CSC/OPM constitute an unauthorized and unwarranted interference in Appellant's contractual rights and obligations with the Military Forces of the United States.

Appellants further argue that by creating two different classes of employees in Hawaii, and denying COLA to one of those classes, solely because of their receipt of commissary and exchange privileges by virtue of their separate military involvement, CSC/OPM has violated Appellants' rights to Equal Protection under the law as guaranteed by the Fifth Amendment to the Constitution.

■ In regard to the first of Appellants' contentions, we state at the outset, that our inquiry into the validity of an administrative interpretation of a statute is limited to whether the interpretation at issue is reasonably related to the purpose of the enabling legislation. *Mourning v. Family Publication Service, Inc.,* 411 U.S. 356, 359, 93 S.Ct. 1652, 1655, 36 L.Ed.2d 318 (1973). To sustain an agency's construction of its authority, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). In other words, we give deference to the interpretation given a statute by the officers or agency charged with its administration. *Lovshin v. Department of the Navy,* 767 F.2d 826 (Fed. Cir.1985) (en banc). Against this backdrop, we review the regulations the President prescribed in implementing the statutory authority contained in 5 U.S.C. § 5941.

■ We observe first that 5 U.S.C. § 5941 broadly delegates to the President the power to institute a COLA program and to set forth terms and conditions for payment. In distinct contrast to the statutes at issue in *Levy v. Urbach,* 651 F.2d 1278 (9th Cir.1981), and *Day v. United States,* 611 F.2d 1122 (5th Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980), cited by Kester, which clearly provided entitlements to certain federal workers, 5 U.S.C. § 5941 does not provide Appellants or any other federal employees with a COLA entitlement. On the contrary, any such entitlement to COLA stems solely from the regulations the President prescribes in implementing his statutory authority. We reiterate that this authority is broadly delegated, and we see nothing in the language of 5 U.S.C. § 5941 to preclude the President, in setting COLA rates, from considering the reduced need of federal employees who have access to lower priced goods and services at military

commissaries and post exchanges. 5 U.S.C. § 5941 squarely bases COLA upon "living costs substantially higher than in the District of Columbia" and is meant to compensate employees who face living costs substantially higher than those found in that reference area. Since commissary and exchange privileges affect the living cost of those who enjoy them, it is not unreasonable to consider such benefit in establishing an appropriate COLA. We conclude that section 205(b)(2) of E.O. 10,-000, is fully consistent with 5 U.S.C. § 5941 since it ensures that those federal employees with lower living costs due to their special purchasing privileges receive a reduced COLA. We reject Appellants' assertion that the statutory term "classes of employees" in 5 U.S.C. § 5941 requires that only job related criteria may be employed in setting COLA rates. We find scant support in the legislative history to suggest this interpretation and do not attach the meaning Appellants apply to the words "classes of employees" to preclude the President from using factors other than job related criteria, such as need, to set COLA rates.

■ Appellant further argue that section 205(b)(2) is invalid because that section does not guarantee exact economic equality in purchasing power with their Washington, D.C. counterparts who have access to purchasing privileges at military commissaries and post exchanges. The statutory language of 5 U.S.C. § 5941, however, does not support Appellants' claim for such economic equality. In particular, the language of that section gives no indication that Congress intended to exclusively mandate equality in effective compensation. Indeed, Congress specifically barred the payment of COLA in excess of 25% of an employees basic pay even if the cost of living differential exceeded 25%. *See* 5 U.S.C. § 5941(a). Since the plain language of 5 U.S.C. § 5941 does not support Appellants' allegation that "economic equality" is guaranteed by the statute we must con-

clude that a mere difference in the level of COLA assigned to various classes of federal employees does not negate the statute's purpose.

▮ We proceed next to Appellants' constitutional claims. Appellants contend that reductions mandated by section 205(b)(2) violate the doctrine of Separation of Powers. On this issue, Appellants argue that by failing to provide a full COLA to employees with access to military commissaries and post exchanges, the President diluted their right of access to military commissaries and post exchanges.

We do not agree with this contention. First, Congress clearly delegated to the President, under 5 U.S.C. § 5941, the authority to prescribe COLA. Pursuant to this congressional grant of authority, the President provided for differing COLA rates depending on differing need. It is difficult for us to see how the President, in setting COLA rates, has in any way affected the military purchasing privileges which Congress provides to Appellants. Nothing in the COLA provisions in any way revoked or interfered with their access to military commissaries and post exchanges and Appellants' military privileges were and are exactly what they would have been had there been no COLA provisions at all. We must conclude then, that there has been no violation of the separation of powers. We note that *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952), upon which Appellants rely, is readily distinguishable from this case. In *Youngstown*, the Court held that President Truman's action to seize steel mills during the Korean War violated the Separation of Powers Doctrine, largely because Congress had declined to enact legislation for the President's actions. In the present case, Congress clearly provided the President the requisite authority to institute a COLA program and the authority to prescribe conditions governing payment of a COLA. 5 U.S.C. § 5941. Moreover, Appellants have not persuasively demonstrat-

ed that any possible incentive to enlist, created by commissary and exchange privileges, was diminished by the COLA program.

▮ Appellants also argue that they have been inequitably treated in comparison with other federal employees in Hawaii who receive a full COLA and federal employees in the District of Columbia who have access to military commissaries and post exchanges. Appellants conclude that there is a violation of equal protection because the distinction in treatment is not rationally related to a valid objective of the statute as implemented by E.O. 10,000.

It is well settled that where a statute does not burden fundamental rights or create classifications predicated on "suspect" criteria, it will not be invalidated on equal protection grounds unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the legislature's actions were irrational. *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979). We believe that the district court correctly upheld the classifications created by the COLA regulations on the basis that they were rationally related to a legitimate government interest. In this case, the government had a legitimate interest in reducing the payment of a cost of living allowance to employees who already enjoyed reduced living costs through access to military commissaries and post exchanges. The Constitution does not preclude the consideration of receipt of one program's benefits in the calculation of benefits levels for a second program. *See Knebel v. Hein*, 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977).

Based on the foregoing, we affirm the judgment below.

AFFIRMED.

MILLER, Senior Circuit Judge, dissenting in part.

The record shows that, in setting the COLA for appellants, "living costs" sub-

stantially higher than those in the District of Columbia were reduced to reflect commissary and exchange privileges of employees in Hawaii—without taking into account such privileges of otherwise similarly situated employees in the District of Columbia. Thus, any differential between "living costs" in Hawaii and those in the District of Columbia *would have been understated.* OPM's interpretation of "living costs" in the District of Columbia under 5 U.S.C. § 5941 is arbitrary, and no rational basis for the flawed differential appears.

In all other respects, I am in agreement with the majority opinion.