Anthony M. FRANK, Postmaster General, et al., Petitioners–Appellants,

v.

Donald D. McQUIGG, et al., Respondents–Appellees.

No. 90–35108.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 1991.

Decided Dec. 6, 1991.

James A. Friedman, Office of Labor Law, U.S. Postal Service, Washington, D.C., Crandon Randall, Asst. U.S. Atty., Anchorage, Alaska, for petitioners-appellants.

Peter A. Galbraith, Galbraith & Owen, Stephen F. Frost, Anchorage, Alaska, for respondents-appellees.

Before WRIGHT, FARRIS and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Donald McQuigg and several others (collectively, "McQuigg") sued their employer, the United States Postal Service (the "Postal Service") for failure to pay adequate overtime wages. McQuigg claimed the Postal Service's formula for computing overtime pay violated the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1988).

The district court granted partial summary judgment for McQuigg, concluding: (1) the Postal Service's formula for computing overtime pay violated the Act; and (2) the Postal Service could not avail itself of a statutory good-faith defense to liability. We have jurisdiction under 28 U.S.C. § 1292(b) (1988), and we affirm in part and reverse in part. This case involves several technical terms; accordingly, we include a glossary as Appendix 1.

### STATUTORY & REGULATORY FRAMEWORK

#### A

The Fair Labor Standards Act (the "Act") requires the Postal Service to pay its employees a premium for overtime work. *See* 29 U.S.C. § 203(e)(2)(B) (1988); 29 U.S.C. § 207(a)(1) (1988). The Postal Service must pay its employees "at a rate not less than one and one-half times the regular rate" for all hours over 40 hours per week. 29 U.S.C. § 207(a)(1); *see* 29 C.F.R. § 778.107 (1990). An employee's "regular rate" under the Act is always an hourly rate. 29 C.F.R. § 778.109 (1990). The "regular ... rate ... is determined by dividing [an employee's] total remuneration ... [before he receives the overtime premium] in any workweek by the total number of hours actually worked by him in that workweek...." *Id.; but cf. Walling v. Youngerman–Reynolds Hardwood Co.,* 325 U.S. 419, 424, 65 S.Ct. 1242, 1245, 89

L.Ed. 1705 (1945) ("the regular rate refers to the hourly rate actually paid the employee for the *normal, non-overtime work-week* for which he is employed" (emphasis added)). Thus, if an employee receives $600 (before any overtime premium) for a 50–hour week (whether in hourly wages, a lump sum, or both), his "regular rate" under the Act is $12/hour. The employee would be paid for his 10 overtime hours at a rate of $(1\frac{1}{2} \times \$12/\text{hour}) = \$18/\text{hour}$. *See* 29 U.S.C. § 207(a)(1).

Postal Service employees working in Alaska receive a Territorial Cost of Living Adjustment ("TCOLA") in addition to their basic pay.[1] *See* 5 U.S.C. § 5941 (1988); 39 U.S.C. § 1005(b) (1988). The TCOLA is "calculated and paid as a percentage of an employee's hourly rate of basic pay [i.e., the base rate] for those hours for which the employee receives basic pay...." 5 C.F.R. § 591.210(b)(1) (1991). By statute, Postal Service employees receive basic pay for a 40–hour workweek. 5 U.S.C. § 6101(a)(2)(A) (1988).

The parties agree on how to calculate TCOLA payments. For example, consider an employee who works 50 hours/week at a base rate of $10/hour, and receives a TCOLA of 25%. Under the applicable regulations, the TCOLA is paid only during the basic, 40–hour week, even though the employee actually works 50 hours. *See* 5 C.F.R. § 591.210(a) (1991). Accordingly, the employee's TCOLA is 25% of $10/hour = $2.50/hour. The TCOLA is paid for 40 hours, and yields a TCOLA payment of $(40 \text{ hours} \times \$2.50/\text{hour}) = \$100$.[2]

The parties also agree the TCOLA contributes to the hourly "regular rate" under the Act. *See generally* 5 C.F.R. § 591.-210(e)(2) (1991). The regular rate is calculated by dividing the employee's *total* remuneration (exclusive of any overtime premium, but *including the TCOLA* ) by his *total* number of hours worked (including overtime hours). *See id.;* 29 C.F.R. § 778.-109. In the example above, the employee's "regular rate" is his total remuneration, $[(50 \text{ hours} \times \$10/\text{hour}) + (\text{TCOLA payments of: } 40 \text{ hours} \times \$10/\text{hour} \times 25\%)] = [(\$500) + (\$100)] = \$600$, divided by the total number of hours worked, $50, = (\$600/50 \text{ hours}) = \$12/\text{hour}$. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.109.

These equations also demonstrate that the regular rate is always greater than the base rate. The regular rate is greater than the base rate because the regular rate includes the TCOLA, while the base rate does not. In the example above, the regular rate is $12/hour, while the base rate is only $10/hour, because the regular rate includes the $100 in TCOLA payments spread over a 50–hour week. The TCOLA payments add $2/hour to the regular rate. $[(40 \text{ hours} \times \$10/\text{hour} \times 25\%)/(50 \text{ hours})] = [(\$100)/(50 \text{ hours})] = \$2/\text{hour}$.

Finally, in an overtime week, the hourly regular rate is always less than the sum of the base rate plus the TCOLA. This is so because the TCOLA is paid only for the *basic* workweek, 40 hours, while the regular rate is computed using the *total* workweek, including overtime hours. In any overtime week, the TCOLA payments are a constant, and insofar as they contribute to the regular rate, are spread more and more thinly as the employee works more and more overtime hours. Modifying the example above, if the employee works 40 hours,

---

**1.** Throughout this opinion, we will refer to the 40–hour workweek as the "basic" workweek. We will refer to an employee's hourly wage (exclusive of the TCOLA or the overtime premium) as the "base rate" of pay. Finally, we will refer to the base rate paid during the basic workweek as "basic pay."

For example, if a postal employee earns a normal wage of $10/hour before receiving either overtime or the TCOLA, and works 50 hours in a week, his "basic" workweek is 40 hours, his "base rate" is $10/hour, and his "basic pay" is $(40 \text{ hours} \times \$10/\text{hour}) = \$400$.

**2.** For clarity, we use "TCOLA" to refer to either a percentage of the base rate, such as "25%," or an hourly wage, such as "$2.50/hour." We use "TCOLA payment" or "TCOLA payments" to refer to the sum of the TCOLA paid over 40 hours, such as "$100."

TCOLA payments remain constant for *any* overtime week because the TCOLA is paid only for the first 40 hours. Accordingly, the TCOLA payment can be seen as a lump-sum bonus, which by statute is paid in full to the employee during the basic (40–hour) week. *See infra* at 596–98.

the TCOLA payments would contribute ($100/40 hours) = $2.50/hour to the regular rate.[3] If the employee works 60 hours, the TCOLA payments would contribute only ($100/60 hours) = $1.67/hour to the regular rate. As soon as the employee exceeds 40 hours, the TCOLA stops being paid, and therefore makes a smaller contribution to the regular rate.

### B

This case arises at the intersection of the Act and the TCOLA. It centers on the proper method for calculating the pay of Postal Service employees who receive a TCOLA and work overtime. As noted above, the parties agree the TCOLA is part of an employee's "regular rate" under the Act. *See generally* 5 C.F.R. § 591.-210(e)(2). Indeed, there is no dispute over how to calculate either the regular rate or the TCOLA. The district court noted: "[o]ne might think that if, as is the case here, the parties agree on the computation of 'regular rate of pay' then there could be no disagreement about the product of one and one-half times the regular rate of pay." The Postal Service states in its brief: "this appeal involves neither a factual nor a purely legal dispute, but largely an arithmetic one." Although the case does involve some difficult mathematical issues, it actually turns on Congress' intent in enacting the TCOLA statute.

### FACTS AND PROCEEDINGS BELOW

Prior to this case, the interplay between the Act and the TCOLA had generated a substantial amount of litigation. In 1977, shortly after the Act became applicable to the Postal Service, the District Court for the District of Columbia ruled the Postal Service had wrongfully excluded the TCOLA from its employees' regular rate in calculating overtime pay under the Act.

*Kaplan v. United States Postal Service,* No. 75–1505, memorandum at ¶ 5 (D.D.C. Oct. 4, 1977); *see Donovan v. United States Postal Service,* 530 F.Supp. 872, 877–78 (D.D.C.1981). In 1978, the court ordered the Postal Service to pay liquidated damages for the violations. *Kaplan v. United States Postal Service,* No. 75–1505, memorandum at ¶¶ 5–8 (D.D.C. Jan. 13, 1978); *see Donovan,* 530 F.Supp. at 877–78.

Later in 1978, the Department of Labor (the "DOL") sued the Postal Service for further violations of the Act.[4] *See Donovan,* 530 F.Supp. at 872; *Donovan v. United States Postal Service,* 530 F.Supp. 894 (D.D.C.1981). In 1982, the *Donovan* case was settled with a judicially-approved agreement prohibiting all private lawsuits against the Postal Service under the Act. *See* 29 U.S.C.A. § 216(b)–(c) (West Supp. 1991) (authorizing such a settlement agreement). On June 15, 1983, the *Donovan* case was dismissed, opening the door to new private lawsuits against the Postal Service.

On February 14, 1983, four months before the dismissal of *Donovan,* McQuigg filed this lawsuit under 29 U.S.C.A. § 216(b) against the Postal Service in Alaska federal district court. McQuigg claimed the Postal Service was undercompensating him for overtime work. On August 4, 1986, the court dismissed the part of McQuigg's complaint relating to activity before June 15, 1983, based on the settlement in *Donovan,*[5] and sustained the rest of the complaint.

On January 8, 1982, counsel for the National Association of Letter Carriers ("NALC") wrote to the DOL's Wage and Hour Administrator ("Administrator"). NALC's counsel requested "an opinion under the [Act] ... regarding the method used by the United States Postal Service ... to calculate overtime payments where a

---

**3.** This $2.50/hour contribution to the regular rate is identical to the TCOLA itself, because in this example the employee works 40 hours, and has the TCOLA added to his salary in *each* hour he works.

**4.** The Office of Personnel Management (formerly the Civil Service Commission) administers

the Act for most federal entities, but the Department of Labor administers the Act for the Postal Service. *See* 29 U.S.C. § 204(f) (1988); 5 C.F.R. § 551.102(b)(2) (1991).

**5.** This dismissal has not been appealed.

... TCOLA ... is involved." (Opinion Letter of May 13, 1983). The DOL's Opinion Letter unequivocally approved the Postal Service's methodology. On August 8, 1983, in response to a letter from McQuigg's counsel, the Administrator reaffirmed the Opinion Letter's conclusions.

Despite the Opinion Letter, on April 30, 1987, the district court ordered partial summary judgment for McQuigg on the issue of the Postal Service's liability under the Act. The court held the methodology in the Administrator's Opinion Letter "directly contravenes the requirements of section 207(a)(1) of [the Act]."

Subsequently, the Postal Service claimed a defense to liability under the Act based on its asserted good-faith reliance on the DOL's administrative regulations in calculating overtime pay. *See* 29 U.S.C. § 259 (1988). However, the district court disagreed, and on December 7, 1988, it ordered summary judgment for McQuigg on the Postal Service's good-faith defense.

On November 2, 1989, the district court certified both of its orders for interlocutory appeal. On January 30, 1990, this court granted the Postal Service's petition to appeal. We have jurisdiction to review the interlocutory orders under 28 U.S.C. § 1292(b). "We review de novo a summary judgment. Where the facts are not disputed, the question is whether the district court correctly interpreted and applied the law." *Swarner v. United States*, 937 F.2d 1478, 1481 (9th Cir.1991) (citation omitted).

## OVERTIME PAY

■ The Postal Service uses the following mathematical formula to calculate an employee's weekly pay.

[A]     Total hours × base rate
[B]  +  TCOLA payments
[C]  +  Overtime hours × ½ × regular rate

On its face, this formula may appear invalid because [C] contains only "½ × regular rate," rather than "1½ × regular rate," as the Act requires. *See* 29 U.S.C. § 207(a)(1). In its Opinion Letter, the DOL defends the formula as follows: "[s]ince in the calculation of the regular rate [base] pay is computed for *all* hours worked in the work-

week, only additional half-time is required for the hours over 40." The DOL appears to argue that because [A] pays the base rate for *total* hours, rather than for *40* hours, [C] pays the correct additional amount for overtime.

McQuigg claims the Postal Service's formula violates the Act. Following the apparent reasoning of the DOL's letter, McQuigg divides "total hours" from [A] into "40 hours" plus "overtime hours." McQuigg thus divides [A] into [A1], the 40-hour component, and [A2], the overtime component. [A1] = (base rate × 40 hours). [A2] = (base rate × overtime hours). Adding [A2] to [C], McQuigg complains the Postal Service pays overtime at [ (base rate) + (½ × regular rate) ] rather than at (1½ × regular rate), as the Act mandates. *See* 29 U.S.C. § 207(a)(1). When an employee receives a TCOLA and works overtime, his regular rate exceeds his base rate. *See supra* at 592. Therefore, McQuigg asserts, he receives less than his due for overtime.

McQuigg argues the Act requires payment according to the following formula.

[A]     40 hours × base rate
[B]  +  TCOLA payments
[C]  +  Overtime hours × 1½ × regular rate

McQuigg's formula pays more than the Postal Service's formula. For example, consider again the employee who works 50 hours per week, earns a base rate of $10/hour, and receives a TCOLA of 25%. There is no dispute that this employee's regular rate is $12/hour. According to the Postal Service's formula, the employee receives:

| | | |
|---|---|---|
| [A] | (50 hours × $10/hour) | = $500 |
| [B] + | (40 hours × $10/hour × 25%) | = $100 |
| [C] + | (10 hours × ½ × $12/hour) | = $ 60 |
| Total earnings: | | $660 |

According to McQuigg's formula, the employee receives:

| | | |
|---|---|---|
| [A] | (40 hours × $10/hour) | = $400 |
| [B] + | (40 hours × $10/hour × 25%) | = $100 |
| [C] + | (10 hours × 1½ × $12/hour) | = $180 |
| Total earnings: | | $680 |

Prima facie, McQuigg makes a persuasive case for his formula, and against the Postal Service's formula. In a nonovertime week, an employee receives [ (base rate × 40) + (TCOLA payments) ], which corresponds to [A] + [B] in

McQuigg's formula. In an overtime week, the Act appears to mandate an additional payment of (1½ × regular rate) for each overtime hour, which corresponds to [C] in McQuigg's formula. According to McQuigg's analysis, the Postal Service's formula pays [A1] + [B] for the nonovertime portion of the week, and pays [A2] + [C] for the overtime portion of the week. Adding [A2] and [C] yields [ (base rate) + (½ × regular rate) ], a sum which is less than the (1½ × regular rate) required by the Act. *See* 29 U.S.C. § 207(a)(1).

However, as one court has noted, the Postal Service's formula "is a statement of the arithmetic processes to go through to ensure that an employee is paid the one and one-half times the regular rate for overtime that the worker is entitled to...." *Brooks v. Weinberger,* 730 F.Supp. 1132, 1138 (D.D.C.1989). That is, the formula is but a means to an end, and we must give it its best defense. Indeed, in this case, the DOL specifically has endorsed the Postal Service's formula in an Opinion Letter. Accordingly, we must follow the commands of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Transpacific Westbound Rate Agreement v. Fed. Maritime Comm'n,* 938 F.2d 1025, 1028 (9th Cir.1991); *Washington State Health Facilities Assoc. v. Dep't of Social and Health Servs.,* 879 F.2d 677, 681 (9th Cir.1989) ("An agency's interpretation of its own regulations is entitled to a high degree of deference and will be upheld as long as it is not plainly erroneous or inconsistent with the regulation").

"First, we must determine whether the language of the statute is clear. 'If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Transpacific,* 938 F.2d at 1028 (quoting *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82). As *Chevron* itself states, "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9.

"However, 'if the statute is silent or ambiguous with respect to the specific issue,' 'the court does not simply impose its own construction on the statute.... Rather, ... the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Transpacific,* 938 F.2d at 1028 (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782; omissions in *Transpacific* ).

There is no question the Act requires 1½ × regular rate for all overtime hours. *See* 29 U.S.C. § 207(a)(1). The Postal Service does not dispute this. However, it correctly asserts its formula is mathematically equivalent to the following formula.

40 hours × regular rate
+ Overtime hours × 1½ × regular rate

This second formula pays the correct overtime, but pays for the basic workweek (40 × regular rate) instead of [ (40 × base rate) + (TCOLA payments) ], or the equivalent,[6] [ (40) × (base rate + TCOLA) ]. In an overtime week, the regular rate is always less than the base rate plus the TCOLA. *See supra* at 592–93. Accordingly, although the Postal Service pays the correct overtime, it pays less for the first 40 hours of an overtime week than it does for the same hours in a nonovertime week.

To illustrate this point, consider two postal employees, *A* and *B.* Both *A* and *B* earn a base rate of $10/hour, and receive a TCOLA of 25%. In a given week, *A* works 40 hours and *B* works 50 hours. According to the Postal Service, *A* receives $500 for 40 hours. [ (40 hours × $10/hour) + (40 hours × $10/hour × 25%) ] = [ ($400) + ($100) ] = $500. *B* receives only $480 for the same 40 hours. [ (50 hours × $10/hour) + (40 hours × $10/hour × 25%) ] = [ ($500) + ($100) ] = $600 total remuneration; [ ($600)/(50 hours) ] = $12/hour regular rate; ($12/hour × 40 hours) = $480.

Under the Postal Service's second formula, an overtime employee receives less than a nonovertime employee for the same 40

---

6. *See supra* note 2.

hours of work. The second formula reduces 40–hour earnings in order to pay overtime earnings. Were there no justification for this approach, we would strike it down as an attempted end-run around the Act. Neither the Postal Service nor the DOL may *arbitrarily* mandate lower *basic* wages in order to pay statutorily required *overtime* wages. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782 ("regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute"); *see also* 29 C.F.R. subpart F, §§ 778.500–03 (1990) ("Devices to Evade the Overtime Requirements" of the Act).

At various points in its opening brief, the Postal Service offers a defense of its practice. It argues the TCOLA is to be prorated over the *entire* workweek: it is to be "treated ... as if it was earned equally in each hour of the workweek, notwithstanding that the TCOLA is actually paid for just 40 hours."[7] For example, if the base rate is $10/hour, the TCOLA is 25%, and the workweek is 50 hours, the Postal Service treats the TCOLA as a $2/hour additional wage earned over 50 hours, rather than as a $2.50/hour wage earned over 40 hours.[8]

If the TCOLA may be prorated over the entire workweek, the Postal Service's formula is justified. Prorating the TCOLA, the Postal Service pays for the basic workweek: [ (40 hours) × (base rate + prorated TCOLA) ]. It pays for overtime: [[ (overtime hours) × (base rate + prorated TCOLA) ] + (overtime hours × ½ × regular rate) ]. The base rate plus the prorated TCOLA add up to the regular rate. *See supra* at 592–93 & note 3. Thus the formula pays the correct overtime of [ (overtime hours) × [ (1 × regular rate) + (½ × regular rate) ]] = [ (overtime hours) × (1½ × regular rate) ]. The formula's lower payment for the 40–hour portion of the workweek comes from prorating the TCO-LA over the entire workweek, and including only a portion of the TCOLA payments in 40–hour earnings. The legality of the lower payment for the 40–hour week depends on the validity of proration.

This case therefore hinges on whether the TCOLA may be prorated, which in turn depends on congressional intent in enacting the TCOLA statute. If Congress intended the TCOLA as an adjustment to *basic* pay, the TCOLA should be paid in full during the basic, 40–hour workweek, and may not be prorated. If the TCOLA may not be prorated, the Postal Service's formula fails. However, if Congress intended the TCOLA as an adjustment to *total* pay, including overtime, the TCOLA may be prorated, and the Postal Service's formula passes muster.

After "employing the traditional tools of statutory construction," *Chevron* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9, we are convinced that Congress intended the TCOLA as an adjustment to basic pay. Accordingly, the TCOLA may not be prorated, and the Postal Service's formulae fail, despite the fact that the DOL specifically has endorsed them.

The TCOLA statute makes the TCOLA available for employees "whose rates of basic pay are fixed by statute." 5 U.S.C. § 5941(a). It also states that the TCOLA "may not exceed 25 percent of the rate of basic pay." *Id.* The implementing regulations follow this statutory command by computing the TCOLA as a percentage of basic pay. *See* 5 C.F.R. § 591.210(b)(1); *see also Kester v. Campbell,* 652 F.2d 13, 14 (9th Cir.1981) ("employees of the federal government who are located outside the continental United States ... are entitled to a cost-of-living allowance, in addition to their base pay") (Farris, J.), *cert. denied sub nom. Kester v. Devine,* 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 298 (1982).

The first TCOLA statute was passed in 1948 as authorization for Executive Order

---

**7.** Referring back to its first formula, the Postal Service would argue that the TCOLA, [B], must be divided into basic and overtime components. For example, an employee who works 60 hours receives ⅔ ($^{40}\!/_{60}$) of the TCOLA in basic pay, and the remaining ⅓ ($^{20}\!/_{60}$) in overtime pay. An employee who works 80 hours receives ½ ($^{40}\!/_{80}$) of the TCOLA in basic pay, and the remaining ½ ($^{40}\!/_{80}$) in overtime pay.

**8.** We will refer to the Postal Service's version of the TCOLA as the "prorated TCOLA."

No. 10,000, signed by President Truman. *See Curlott v. Campbell,* 598 F.2d 1175, 1177 (9th Cir.1979); *Kester v. Horner,* 778 F.2d 1565, 1567 (Fed.Cir.1985), *cert. denied,* 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986). The statute was recodified in 1966. *See* Pub.L. 89–554, 80 Stat. 512 (1966). Executive Order No. 10,000 contained the following provision.

Sec. 208. Payment of Territorial post differentials and cost-of-living allowances.

(a) The following regulations shall govern the payment of Territorial foreign post differentials and Territorial cost-of-living allowances under this Part:

. . . .

(3) *Payments to persons serving on a part-time basis shall be pro-rated to cover only those periods of time for which such persons receive basic compensation.*

(4) *Payment shall not be made for any time for which an employee does not receive basic compensation.*

Exec. Order No. 10,000, 13 Fed.Reg. 5453 (1948), *reprinted as amended in* 5 U.S.C.A. § 5941 (1980) (emphasis added).

Executive Order No. 10,000 allows proration, but only *within* the basic-pay period. It does *not* authorize proration of the TCOLA into overtime. The current regulations implementing the TCOLA echo this approach: the TCOLA "is calculated *and paid* as a percentage of the employee's hourly rate of basic pay for those hours for which the employee receives basic pay...." 5 C.F.R. § 591.210(b)(1) (emphasis added).

There is a sensible reason for not prorating the TCOLA. Including the entire TCOLA in basic pay ensures that employees who work overtime receive the same pay for 40 hours as employees who do not work overtime. It eliminates the anomaly which proration was designed to justify. Indeed, [i]t is the policy of Congress that Federal pay fixing for employees under the General Schedule be based on principles that—(1) *there be equal pay for equal work* within each local pay area; (2) within each local pay area, pay distinctions be maintained in keeping with work and performance distinctions; (3) Federal pay rates be compatible with non-Federal pay rates for the same levels of work within the same local pay area; and (4) any existing pay disparities between Federal and non-Federal employees should be completely eliminated.

5 U.S.C.A. § 5301 (West Supp.1991) (emphasis added). Prorating the TCOLA, and thereby paying overtime employees less than nonovertime employees for the same 40 hours of work, does not yield "equal pay for equal work."

The TCOLA statute delegates fairly broad power to the Executive branch. "Except as otherwise specifically authorized by statute, the [TCOLA] is paid only in accordance with regulations prescribed by the President establishing the rates and defining the area, groups of positions, and classes of employees to which each rate applies." 5 U.S.C. § 5941(a). But the power delegated is the power to set the amount of the TCOLA, so long as it does not "exceed 25 percent of the rate of basic pay." *Id.* There is no express delegation of authority to determine whether the TCOLA is to be included in base or overtime pay; and as discussed above, Congress appears to have intended the TCOLA as an addition to base pay.

*Chevron* does not allow an agency's interpretation of a statute to override congressional intent. Here, "employing traditional tools of statutory construction, ... [it appears] that Congress had an intention on the precise question at issue," *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9, and that the intention was to make the TCOLA an addition to basic pay. Accordingly, despite the deference which we owe to the DOL, we affirm the district court on the Postal Service's liability under the Act. The Postal Service's formula for calculating overtime pay when employees receive a TCOLA does not comport with the Act or the TCOLA statute.[9]

**9.** Our holding is limited to the TCOLA. Postal employees (and other employees covered by the

*GOOD–FAITH DEFENSE*

■ 29 U.S.C. § 259, part of the Portal-to-Portal Act, establishes the following defense to liability under the Act.

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay ... overtime compensation under the Fair Labor Standards Act ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of [the Administrator of the Wage and Hour Division of the Department of Labor], or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belongs. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

29 U.S.C. § 259(a).

This statute insulates the Postal Service from liability if it can show it acted in (1) good faith, (2) conformity with, and (3) reliance on the DOL's regulations or the Administrator's Opinion Letter. All parties agree the Postal Service has calculated overtime pay in "conformity with" the Department of Labor's Opinion Letter.

The district court also correctly concluded: "there is no genuine fact dispute but that [the Postal Service] computed wages at all times relevant to this case in reliance upon" the DOL's Opinion Letter. McQuigg disputes this point in his brief, but offers no persuasive rationale for his position. Under the terms of the *Donovan* agreement, the Postal Service is not liable to

McQuigg for violations of the Act occurring before June 15, 1983.[10] The Administrator wrote his Opinion Letter on May 13, 1983, two months *before* that date.

The key question is whether or not the Postal Service acted in "good faith" when it relied on the DOL's Opinion Letter. The DOL's regulations implementing 29 U.S.C. § 259(a) define and explain "good faith."

> The legislative history of the Portal Act makes it clear that the employer's "good faith" is not to be determined merely from the actual state of his mind. Statements made in the House and Senate indicate that "good faith" also depends upon an objective test—whether the employer, in acting or omitting to act as he did, and in relying upon the regulation ... or [Opinion Letter] acted as a reasonably prudent man would have acted under the same or similar circumstances. "Good faith" requires that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry.

29 C.F.R. § 790.15(a) (1990) (footnotes omitted); *see Kam Koon Wan v. E.R. Black, Ltd.*, 188 F.2d 558, 562 (9th Cir.1951), *cert. denied*, 342 U.S. 826, 72 S.Ct. 49, 96 L.Ed. 625 (1951).

The district court concluded the Postal Service had not acted in good faith because McQuigg's complaint "put [it] upon inquiry" that its overtime pay methodology was challenged. McQuigg posits a stronger version of this view, claiming that a union grievance which he filed on October 1, 1981, put the Postal Service on notice.

■ The DOL's regulations do not support either the district court's or McQuigg's view. The Portal Act and its regulations strongly imply that an employer who relies on and conforms to an Opinion Letter which specifically addresses him and his circumstances is acting in good

---

Act) receive other forms of differential pay, such as Sunday or night pay. The Postal Service's formula prorates these payments as well, treating them as if they were earned equally in each hour of the workweek. *See Brooks,* 730 F.Supp. 1132. Our holding is based on Congress' intent in enacting the TCOLA statute. Accordingly, we do not reach the validity of the

Postal Service's practice with respect to other forms of differential pay.

**10.** The district court dismissed the portion of McQuigg's complaint relating to the period before June 15, 1983, and McQuigg has not appealed that dismissal. *See supra* note 5.

faith. *See* 29 C.F.R. § 790.15(b) (1990). The regulations and relevant precedent also indicate that any duty of inquiry owed by the employer is satisfied by an inquiry to the Administrator. *See id; Olson v. Superior Pontiac–GMC, Inc.,* 765 F.2d 1570, 1580 (11th Cir.1985) (in a case where "the president of a company and one of its top administrators had differing interpretations of a provision.... a prudent person would have sought professional advice"), *modified on different grounds,* 776 F.2d 265 (11th Cir.1985); *Beebe v. United States,* 226 Ct.Cl. 308, 640 F.2d 1283, 1293–94 (1981).

We detect no manifestly contrary congressional intent, and accordingly we defer to the regulations. *See Transpacific,* 938 F.2d at 1028. Thus, even if (as the district court concluded) McQuigg's complaint created a duty of inquiry on the part of the Postal Service, that duty was fulfilled when the Postal Service received the Administrator's Opinion Letter specifically endorsing its overtime pay practice. The fact that the Postal Service did not itself request the Opinion Letter is irrelevant.

Accordingly, we reverse the district court on the issue of the Postal Service's good-faith defense under 29 U.S.C. § 259. The Postal Service is protected from any back-pay liability to April 30, 1987, the time of the district court's order invalidating the Opinion Letter and finding liability under the Act. *See* 29 U.S.C. § 259(a).

### CONCLUSION

We affirm the district court on the issue of the Postal Service's liability under the Act. Although the DOL has endorsed the Postal Service's approach, Congress specifically has not endorsed it. Congress' intent "is the law and must be given effect." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9.

We reverse the district court on the issue of the Postal Service's good-faith defense to liability under the Act because the Postal Service relied on and conformed to the Administrator's Opinion Letter which specifically endorsed its overtime pay methodology.

Each party shall bear its own costs.

### AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.

### APPENDIX 1: GLOSSARY

*Regular Rate.* Defined by the regulations as "total remuneration," (excluding the overtime premium but including the TCOLA payment), divided by "total number of hours actually worked." 29 C.F.R. § 778.-109. It is always an hourly rate. *Id.* The regular rate is used to calculate overtime pay under the Act. The Act requires wages of ($1\frac{1}{2}$ × regular rate) for each overtime hour worked. 29 U.S.C. § 207(a)(1).

*Base Rate.* The employee's normal, hourly wage, not including the TCOLA or other special bonuses.

*Basic Workweek.* For postal workers, the basic workweek is 40 hours. 5 U.S.C. § 6101(a)(2)(A).

*Basic Pay.* The base rate paid for the basic workweek. For example, if a postal worker has a base rate of $10/hour, his basic pay is [ ($10/hour) × (40 hours) ] = $400.

*TCOLA.* The Territorial Cost of Living Adjustment, paid to postal employees in Alaska. 5 U.S.C. § 5941; 39 U.S.C. § 1005(b). The TCOLA is calculated as a percentage of the employee's base rate, and paid for the basic workweek. For example, if the base rate is $10/hour, and the TCOLA is 25%, the postal employee (who has a basic workweek of 40 hours) has a TCOLA of $2.50/hour, paid for 40 hours, for a total TCOLA payment of $100. In this opinion, we use "TCOLA" to refer either to the percentage (25%) or dollars/hour ($2.50/hour) amount; we use "TCOLA payment" to refer to the dollar amount received by the postal worker ($100) due to the operation of the TCOLA. The TCOLA payment remains constant in any overtime week because it is generated using the basic week, which is 40 hours, no matter how many hours the employee actually works.

*TCOLA Payment.* The TCOLA paid over the basic workweek. We use "TCOLA payment" to refer to the dollar amount received by the postal worker due to the operation of the TCOLA. We use "TCOLA" to refer to a percentage or dollar/hour amount.

*Prorated TCOLA.* We use "prorated TCOLA" to refer to a dollar/hour amount produced by dividing the TCOLA payment by the total number of hours in the workweek. For example, if a postal employee earns a base rate of $10/hour and a TCOLA of 25% (or $2.50/hour), he receives a TCOLA payment of $100. If he works 50 hours, his prorated TCOLA is ($100/50 hours) = $2/hour. As he works more overtime hours, his prorated TCOLA shrinks because the TCOLA payment (which remains constant in any overtime week) is divided by an increasingly large number. However, when an employee does not work overtime, his prorated TCOLA is equivalent to his TCOLA, because the derivation of the prorated TCOLA is merely the reverse of the generation of the TCOLA payment.

FARRIS, Circuit Judge, dissenting:

We must decide whether the Postal Service's method for computing employees' overtime pays Postal Service employees "no less than one and one-half times the regular rate," 29 U.S.C. § 207(a)(1) (1989), for hours worked over forty hours per workweek. *See also* 29 C.F.R. § 788.107 (1990). We are required to approve unless the method used is "plainly erroneous or inconsistent with the language of the [applicable statutes] and regulation[s]." *Stone Forest Indus. v. Robertson,* 936 F.2d 1072, 1074 (9th Cir.1991). The Postal Service acted in good faith as the majority holds, but I would not reach that issue because the Postal Service's method for computing overtime is not plainly erroneous.

As the majority explains, if an employee works fifty hours in a given workweek and receives a basic rate of ten dollars ($10) per hour and a TCOLA payment of one hundred dollars ($100), then the employee's regular rate is twelve dollars ($12) per hour. *See supra* at 592. In such a case, the TCOLA payment adds two dollars ($2) per hour to the regular rate because it is "spread over a 50–hour week." *Id.* Thus, according to McQuigg, the employee should receive no less than one hundred and eighty dollars ($180) (10 × 1½ × $12/hour) for the ten hours of overtime. McQuigg argues, however, that the Postal Service's formula pays only one hundred and sixty dollars ($160) ((10 × $10/hour) + (10 × ½ × $12/hour)) for these hours. This simply is not true.

Specifically, the Postal Service pays the employee a total of one hundred and eighty dollars ($180) for the ten hours of overtime by *allocating* twenty dollars ($20) of the TCOLA payment to those hours. In other words, because overtime hours constitute twenty percent (10 hours/50 hours) of the employee's total hours worked, twenty dollars ($20) (20% × $100) of the TCOLA payment can be allocated to overtime. The prorated TCOLA is two dollars ($2) per hour. Eighty dollars ($80) (40 hours × $2/hour) of the TCOLA payment compensates the employee for the basic workweek, and twenty dollars ($20) (10 hours × $2/hour) of the TCOLA payment compensates the employee for the ten hours of overtime. The employee thus receives no less than one and one-half times the regular rate for hours worked over forty hours per workweek. Section 207(a)(1) is therefore satisfied.

The same is true of an employee who works sixty hours in a given workweek. The employee's regular rate is eleven dollars and sixty-seven cents ($11.67) per hour (($600 + $100)/60 hours). *See supra* at 592–93. Thus, the employee should receive three hundred and fifty dollars ($350) (20 hours × 1½ × $11.67) for the twenty hours of overtime. The Postal Service begins by paying the employee two hundred dollars ($200) (20 hours × $10/hour). Because overtime hours now constitute thirty-three percent (20 hours/60 hours) of the employee's total hours worked, the Postal Service next allocates thirty-three dollars ($33) (33% × $100) of the TCOLA payment to overtime. The Postal Service then pays the employee an additional one hundred

and seventeen dollars ($117) (20 × ½ × $11.67). In sum, the employee receives three hundred and fifty dollars ($350) ($200 + $33 + $117), and section 207(a)(1) again is satisfied.

The majority puts the question: Do the applicable statutes and regulations allow the Postal Service to allocate the TCOLA payment over all hours worked? *See id.* at 596. More properly stated, the question is: Is allocating the TCOLA payment over all hours worked plainly erroneous or inconsistent with the language of the applicable statutes and regulations?

The majority argues persuasively that prorating the TCOLA violates Congress' policy of "equal pay for equal work," *see* 5 U.S.C. § 5301 (1991), because an employee who works forty hours receives more *for those forty hours* than an employee who works sixty hours (even though the employee who works forty hours receives less overall). *See supra* at 597. When Congress enacted section 5301, however, it was aware that this "anomaly" exists whenever employees receive a salary or fixed bonus and work a different number of hours. Thus, Congress' policy can be interpreted as requiring only that employees who work equal hours receive equal compensation. The Postal Service's method for computing employees' overtime compensation satisfies this requirement. If we were writing on a clean slate, I might adopt the view of the majority. But, the question is whether the plan adopted by the Postal Service is plainly erroneous or inconsistent with the language of the statute. Since it is not, we should not strain to find it so because we believe another plan to be better. That is not the function of appellate review.

Moreover, the Postal Service's method for computing employees' overtime compensation is supported by the Department of Labor, in general, and the Administrator of the Wage and Hour Division, in particular. According to 29 C.F.R. § 788.110(b) (1990):

Hourly rate and bonus. If [an] employee [who works forty-six hours per week and has a base salary of $6 per hour] receives, in addition to his earnings at an hourly rate, a production bonus of $9.20, the regular hourly rate of pay is $6.20 an hour (46 hours at $6 yields $276; the addition of the $9.20 bonus makes a total of $285.20; this total divided by 46 hours yields a [regular] rate of $6.20). The employee is then entitled to be paid a total wage of $303.80 for 46 hours (46 hours at $6.20 plus 6 hours at $3.10....)

After considering both the Postal Service's and McQuigg's methods for computing employees' overtime compensation, the Administrator of the Wage and Hour Division concluded that the Postal Service "is computing overtime compensation in accordance with the provisions of the [Fair Labor Standards Act]." Letter from William M. Otter, Administrator, U.S. Dept. of Labor, Wage and Hour Div., to Bruce H. Simon, Attorney for Nat'l Ass'n of Letter Carriers 3 (May 13, 1983).

Although the TCOLA payment is *computed* like an hourly wage, nothing in the applicable statutes and regulations prohibits the Postal Service from subsequently *treating* the payment like a salary or fixed bonus. These provisions allow the Postal Service to spread TCOLA payments "more and more thinly as the employee works more and more overtime," *supra* at 592, when it computes an employee's regular rate. Similarly, the Postal Service may do likewise when it pays the employee for hours worked over forty hours per workweek. The Postal Service's interpretation of these provisions is not plainly erroneous. The majority decision amounts to unjustified interference with the day-to-day operations of the Postal Service. I would reverse.