Jorge A. DELPIN APONTE,
et al., Plaintiffs,

v.

The **UNITED STATES,** Defendant.

No. 05–1043C.

United States Court of Federal Claims.

Aug. 14, 2008.

Santiago F. Lampon–Gonzalez, Lampon & Associates, San Juan, Puerto Rico, for plaintiffs.

Michael Dierberg, Commercial Litigation Branch, Civil Division, United States Department of Justice, with whom were Jeffrey S. Bucholtz, Assistant Attorney General, Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director, all of Washington, D.C., for defendant. Daniel Gary, Law Department, United States Postal Service, Washington, D.C., of counsel.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

The plaintiffs in this case are a large number of current and former employees of the United States Postal Service ("USPS"), residing in the Commonwealth of Puerto Rico. They allege that the USPS failed to properly compensate them when overtime was worked, and they seek to certify a class for purposes of obtaining back pay and other damages. Pending before the Court is plaintiffs' motion for leave to file a second amended complaint. The proposed complaint differs from the first amended complaint (filed after this case was transferred from the Puerto Rico district court) in two respects. First, the named plaintiffs, all of whom resided in Puerto Rico at the time their alleged claims arose, seek to certify a class not just of postal employees residing in Puerto Rico but instead comprising potentially all USPS employees, systemwide. Second, the proposed complaint would more generally describe the cause of their alleged injuries, no longer emphasizing how the Territorial Cost of Living Adjustment ("TCOLA") figures in the overtime pay calculations. For the reasons that follow, plaintiffs' motion is GRANTED–IN–PART and DENIED–IN–PART.

## I. BACKGROUND

This case involves the calculation of overtime pay owed to USPS employees. Before turning to the motion to amend the complaint, brief overviews of the law regarding overtime pay and of the history of this lawsuit appear in order.

## A. Overtime and the Fair Labor Standards Act

An employee covered by the terms of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, cannot be employed "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1) (2000). This "time and a half" concept would be simple if all covered employees were paid on a flat, hourly basis. But some employees receive weekly, monthly, or annual salaries, and some receive premium pay for working less-desirable shifts, working weekends, or for other reasons.[1] Thus the term "regular rate" is utilized to express the overtime pay

---

1. Other complications include earnings on a piece-rate basis and commissions, which are not relevant here. See, e.g., 29 C.F.R. §§ 778.111, 778.117 (2007).

to which an employee is entitled—a figment of the FLSA that, to confuse things further, was not initially defined in the statute.[2]

An employee's regular rate is now defined "to include all remuneration for employment paid to, or on behalf of, the employee," with a few exceptions. 29 U.S.C. § 207(e) (2000). Among the amounts excluded from the regular rate calculation is the "extra compensation provided by a premium rate paid" for overtime, whether overtime is based on hours exceeding eight in one day, forty in one week, or the employee's "normal" or "regular" working hours. 29 U.S.C. § 207(e)(5) (2000). Thus, when determining the "regular rate" for purposes of calculating the overtime pay owed an employee under the FLSA in a given workweek, the compensation for the overtime hours worked is shorn of any overtime premium. As a result, these hours figure into the total compensation as if they were non-overtime hours, at the base rate of pay plus any associated non-overtime premium.[3]

Because the regular rate is used for the purpose of calculating hourly compensation, the statute implicitly requires that the compensation that is totaled up for the workweek under section 207(e) be divided by all of the hours for which the compensation was received. Once the regular rate of pay is derived, it would appear a simple matter to multiply this by one and one-half and then apply it to the overtime hours worked. But in determining whether an employer satisfied the obligation of paying this amount to the employee, another complication arises whenever premium pay for nights, weekends, and the like is involved. The fact that different hours worked in a week have different pay rates associated with them poses a problem.

If one views the FLSA as mandating overtime compensation at the margin, then the overtime rate—which will be our shorthand for "one and one-half times the regular rate"—is owed for the very hours worked after the forty-hour mark is passed. But two employees working at the same rates of pay, and working the same number of premium and non-premium hours in a given week, might then receive different pay, depending on whether the premium hours fell before or after the forty-hour mark. For instance, if forty hours were worked at the base rate, and ten hours at a weekend premium that happened to be paid at a rate that was 125% of the regular rate, an employee whose weekend hours were hours 41 through fifty of the workweek would seem to be owed an additional 25% of the regular rate for those overtime hours (to bring his compensation for those ten hours up to the overtime rate). An employee who worked the weekend hours first would receive a much larger addition to his pay for the overtime—the difference between 150% of the regular rate and the base rate, for each of the ten hours. Thus, the marginal approach can result in different amounts credited toward overtime, and a variation in the residual amount of overtime pay owed, even when the aggregate hours worked by employees are identical.[4] The Supreme Court opined, in dictum, that such a result "would not be in accord with the statutory purpose." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 476–77 n. 34, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948).

This potential problem is avoided if, on the other hand, one takes an aggregate approach

---

**2.** *See Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948) (noting that "[t]he statute contain[ed] no definition of regular rate of pay and no rule for its determination").

**3.** This is because the regular rate, when some premium (non-overtime) pay is included in the employee's remuneration, is higher than the base rate (which is itself either the basic hourly rate or the weekly salary divided by the regular hours worked)—and thus, to the extent the regular rate exceeds the base rate, this difference constitutes part of the overtime "premium rate."

**4.** This assumes that premium pay that is earned for non-overtime reasons can be credited toward overtime pay, a matter concerning which the statute is silent. *Compare* 29 C.F.R. § 778.203 (2007) (suggesting that weekend or "special days" premium pay that is not large enough to be excluded from the regular rate calculation under 29 U.S.C. § 207(e)(6) might meet the definition of overtime premium pay under 29 U.S.C. § 207(e)(5)), *with* 29 C.F.R. § 778.207(a) (2007) (interpreting 29 U.S.C. § 207(h) to prohibit crediting toward overtime pay any premium pay amounts included in the regular rate calculation).

to the FLSA mandate. Under such an approach, the overtime rate is not associated with any actual hours worked (*e.g.*, those falling on a Friday night or a Sunday afternoon), but instead is based on a number—the number of hours in excess of forty that are worked in the week. Viewed this way, each and every hour worked contributed to the result that the total exceeded forty, and no particular group of hours is isolated as the overtime ones. Thus, instead of any particular hour's compensation being counted toward overtime, since all contribute, all must count—and the way this is done is by averaging them. As we have seen, the average employed in this context is the regular rate. If each overtime hour is treated as if it were already paid at the regular rate, the residual amount due once the employer is so credited is one-half times the regular rate for each overtime hour.

The aggregate approach appears to be followed by the Office of Personnel Management ("OPM"), which administers the FLSA for most federal employees, and by the Department of Labor ("DOL"), which administers the FLSA for the private sector and some federal employees—including those of the USPS.[5] *See* 5 C.F.R. § 551.512(a) (2008); *cf.* 29 C.F.R. § 778.110(b) (2007) (using an example involving a base hourly rate and an unspecified production bonus). As was noted above, the FLSA expressly requires that the regular rate be calculated by *gathering up all* compensation earned in a workweek, except for overtime premia and certain other exclusions.[6] Since this sum of compensation, di-

vided by the total number of hours worked (non-overtime and overtime), yields the regular rate, the sum of compensation used in the calculation is equivalent to the regular rate multiplied by the non-overtime and overtime hours worked. Based on this tautology, courts have upheld the method of calculating overtime pay that assumes that once the regular rate is calculated, all that remains owed to the employee is the "one-half" part of the "one and one-half times the regular rate" requirement. *See, e.g., Zumerling v. Devine,* 769 F.2d 745, 752–53 (Fed.Cir.1985) (finding OPM's method "proper" in the context of federal firefighters compensated under 29 U.S.C. § 207(k)); *Wisnewski v. Champion Healthcare Corp.,* Civil No. A3–96–72, 2000 WL 1474414, at *5–6, 7–8, 2000 U.S. Dist. LEXIS 12734, at *20, 25–26 (D.N.D. Jan. 11, 2000) (holding that the DOL's method, provided in the example of 29 C.F.R. § 778.110, is "correct"), *aff'd sub nom. Reimer v. Champion Healthcare Corp.,* 258 F.3d 720, 726 (8th Cir.2001).

Challenges to this approach may have been prompted by the fact that the compensation for hours worked in excess of forty, used in calculating the regular rate, was assumed to be at the *base* rate, rather than the regular rate. But this was the choice of Congress, which could have instead defined the regular rate in a manner more consistent with a marginal approach—by excluding completely *all* compensation received for overtime hours, rather than merely the "extra compensation" due to use of "a premium rate" for overtime hours. *See* 29 U.S.C. § 207(e)(5).[7] In light

---

**5.** *See* 29 U.S.C. § 204(a) (2000) (creating position of Administrator of the Wage and Hour Division in the DOL); 29 U.S.C. § 204(f) (2000) (authorizing the Director of OPM to administer provisions of FLSA for federal employees except those employed by the USPS or three other entities); 29 U.S.C. § 216(c) (2000) (authorizing the Secretary of Labor to supervise overtime payments under the FLSA).

**6.** To the extent that the premium portion of pay received for designated overtime hours is excluded from the regular rate calculation, this amount of pay is creditable toward the overtime compensation due under the FLSA. 29 U.S.C.A. § 207(h)(2) (2008) (cross-referencing 29 U.S.C. § 207(e)(5)). So, too, is the excluded extra compensation associated with weekend or special days, or with a "clock pattern" system, that was

at least fifty percent above the base rate. *Id.* (cross-referencing 29 U.S.C. § 207(e)(6), (7)); *see also* 29 C.F.R. § 778.204 (2007) (explaining "clock pattern" system).

**7.** If overtime hours did not figure into the regular rate calculation, then these hours would necessarily need to be multiplied by one and one-half times the regular rate to satisfy the FLSA. A more complex version of this alternative definition, however, could *still* be consistent with an aggregate approach. For instance, included in the regular rate calculation could be any extra compensation associated with the overtime hours that is earned for reasons other than working more than forty hours, even though the base rate and overtime premium for these hours are excluded.

of the tautology described above, the total compensation used to calculate the regular rate is equivalent to the amount due an employee if he is compensated at the regular rate of pay for each hour worked (including overtime). Thus, only one-half of the regular rate, for each hour worked in excess of forty, needs to be added to the employee's pay to satisfy the FLSA—assuming, that is, that the law allows the *non-overtime hours worked* to be compensated on the basis of a "regular rate" of pay. If, on the other hand, there were some separate legal requirement that a particular hour be compensated in an amount that exceeded the regular rate, a conflict with this method of calculating FLSA overtime compensation might be presented.

The Court uses "might be" rather than "is" to describe this situation, as one would still need to determine if it is reasonable to interpret the FLSA to allow overtime compensation to be calculated *as if* all hours of work were compensated at the regular rate (and this is not the stage in the proceedings for such a question to be resolved). But in any event, if one were to interpret the FLSA as requiring the marginal approach—so that the overtime rate must be applied to the very hours worked once the forty-hour mark is passed—in theory, the identified non-overtime hours might carry their own independent mandate. If an employee were entitled (by statute or regulation) to a certain base rate of pay for each of the first forty hours worked, and some of these hours also entitled him to extra compensation due to the applicability of some premium, then the extra compensation already earned is spread thinner once the overtime hours are added in at the base rate. As a result, the product of the regular rate and the initial forty hours is smaller than the amount of compensation to which the employee would be entitled for those hours.[8]

Such a result could be analogized to a circumstance in which one person owed another two separate debts of $50 and $15. The debtor could hardly hand his creditor two twenty dollar bills, a ten dollar bill and a five dollar bill, and call them even—by arguing that the two twenties and the ten satisfy the first debt, and the ten and the five the second one. To the extent that a premium independently earned for non-overtime hours were included in the regular rate and counted toward the compensation received for overtime hours at one times the regular rate, this could be characterized as either a double-counting, or underpaying the employee for his non-overtime earnings.[9]

This marginal approach to the FLSA is reflected in the precursor to the present litigation, the Ninth Circuit's decision in *Frank v. McQuigg*, 950 F.2d 590 (9th Cir. 1991). In *McQuigg*, Alaska-based employees of the USPS argued that the FLSA was violated by the government's practice of adding to the compensation used in calculating the regular rate just one-half times the regular rate of pay for overtime hours worked. *McQuigg*, 950 F.2d at 594. Part of the compensation earned by those employees and factored into the regular rate was a TCOLA. *See* 5 U.S.C. § 5941 (2006); 39 U.S.C. § 1005(b) (2000). The Ninth Circuit held that Congress intended to tie the TCOLA to the basic pay earned by employees for working non-overtime hours, and that as a consequence the TCOLA payment could only be allocated to non-overtime hours. *See McQuigg*, 950 F.2d at 596–97. As we have seen, the compensation that is used to calculate the regular rate can be said to include a payment of the regular rate of pay for each overtime hour worked only if the employee's pay for non-overtime hours may be limited to the regular rate as well. Under the Ninth

8. The converse would be true if only the hours worked in excess of forty—and not the first forty—were associated with a non-overtime premium.

9. Of course, the FLSA expressly allows double-counting, in that certain forms of extra compensation that are excluded from the regular rate calculation are creditable toward the required overtime pay—without any requirement that the associated hours be "overtime" ones. *See* 29

U.S.C.A. § 207(h)(2). Indeed, the provision that excludes the overtime premium is not confined to the extra compensation received for hours worked in excess of forty, but also covers the premium portion of compensation paid because more than eight hours are worked in a day or hours outside an employee's "normal" or "regular" working hours are worked. 29 U.S.C. § 207(e)(5).

Circuit's interpretation of the TCOLA law, an employee is entitled to his TCOLA payment for working non-overtime hours, and to the extent this payment contributed to the regular rate a part of it was improperly prorated to cover compensation owed for overtime hours. *See id.* at 596. Thus, the USPS was found to be underpaying, by an amount equal to the TCOLA contribution to the regular rate (the TCOLA divided by total hours worked), for each overtime hour worked. *See id.*

## B. The Present Litigation

This lawsuit was filed in the United States District Court for the District of Puerto Rico on May 24, 2002, by several current and former employees of the USPS who either resided in Puerto Rico at the time of filing or at the time their alleged claims arose. *See* Complaint, *Delpin Aponte v. Potter*, No. 02–1787 (D.P.R. filed May 24, 2002). The original complaint alleged that the USPS improperly calculated overtime pay by multiplying the base rate, rather than the regular rate, by one and one-half for each overtime hour worked. Compl. ¶ 18. The plaintiffs also alleged that the TCOLA adjustment to overtime pay that the USPS made for employees located in Alaska and Hawaii, presumably to comply with *McQuigg*, was not made for employees located in Puerto Rico. *See id.* ¶ 19.

It is hard to say how many plaintiffs were on the first complaint, or, indeed, how many are currently before the Court. The caption in the district court listed thirteen separate claimants (plus eight conjugal partners and the associated conjugal partnerships),[10] but only twelve are identified in the body of the complaint. *Id.* ¶ 6.[11] On January 29, 2003,

through two separate motions, plaintiffs moved to add 160 additional plaintiffs (not counting the conjugal partnerships). Docket Nos. 12 & 13, *Delpin Aponte v. Potter*, No. 02–1787 (Jan. 29, 2003).[12] On February 5, 2003, plaintiffs purportedly moved to add nineteen additional plaintiffs, again through two separate motions—although only eighteen new plaintiffs were identified. Docket Nos. 14 & 15, *Delpin Aponte v. Potter*, No. 02–1787 (Feb. 5, 2003).[13] And on February 7, 2003, plaintiffs moved to add four additional plaintiffs, but one of these appears to have already been included in the second of the motions filed two days earlier. Docket No. 17, *Delpin Aponte v. Potter*, No. 02–1787 (Feb. 7, 2003).[14] In any event, it seems that there were 194 different individuals identified as plaintiffs before the district court. After plaintiffs moved for class certification under Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), the government opposed, in part because the FLSA requires individual written consent forms for each plaintiff and none had yet been filed. *See* Mem. & Order at 2, *Delpin Aponte v. Potter*, No. 02–1787 (D.P.R. Sept. 5, 2003) (citing 29 U.S.C. § 216(b)). In response, plaintiffs on April 23, 2003 filed a supplemental motion containing signed consent forms for, according to the district court, "all the plaintiffs in the case." *See id.* It appears to the Court, however, that consent forms from only 192 plaintiffs were filed.

On September 5, 2003, the district court "conditionally certified" the requested class based on the admittedly "lenient standard" of whether potential plaintiffs are "similarly situated," a characteristic called for in 29 U.S.C. § 216(b). *Id.* at 3–4. The district court contemplated that, once discovery was

---

**10.** The conjugal partners and partnerships were subsequently dismissed as unnecessary parties to the lawsuit. Order, *Delpin Aponte v. Potter*, No. 02–1787 (Aug. 26, 2004). At that same time, employment discrimination and pension claims were voluntarily dismissed from the case. *Id.* These claims were not included in the first amended complaint, and will not be discussed in this opinion.

**11.** Plaintiff Alberto Ortíz Torres was omitted from paragraph 6 of the complaint.

**12.** These two motions were granted on February 6, 2003. Plaintiffs' first motion to add plaintiffs actually contained 160 claimants, but one of these—Jose Luis Otero—was already a named plaintiff.

**13.** One of the original named plaintiffs, Edwin Hernandez, was included in the first of these two motions.

**14.** This was Edna Rijos, previously identified as Edna Rios. All three February motions were granted on September 5, 2003.

completed, the government could move to decertify the class. *Id.* at 3–4, 5. But instead, the government moved to dismiss the matter for lack of jurisdiction, and the plaintiffs apparently did not dispute that their case was within our exclusive jurisdiction under the Tucker Act. *See* Order at 1, *Delpin Aponte v. Potter*, No. 02–1787 (June 15, 2005). The district court accordingly transferred the case to our court. *Id.* at 2–3.

After transfer of the case from the district court in Puerto Rico, and pursuant to Rule 3.1(a)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), the plaintiffs filed their initial, amended complaint with this court on February 24, 2006. In all pertinent, substantive respects the amended complaint was identical to the initial complaint filed in the district court. The plaintiffs alleged that "the USPS has historically underpaid overtime to postal employees in Puerto Rico" by calculating overtime pay as one and one-half times the base rate of pay, instead of using the regular rate. Am. Compl. ¶ 16. Although the regular rate is computed by including a variety of premiums in addition to the TCOLA, the amended complaint focused on the latter. Following *McQuigg*, plaintiffs alleged that "TCOLA may not be prorated utilizing hours worked by any given employee beyond the regular 40–hour week." *Id.* ¶ 14. They also alleged that, presumably because of compliance with *McQuigg*, overtime payments for USPS "employees in Alaska and in Hawaii are being calculated and paid as demanded in this complaint." *Id.* ¶ 17. On the other hand, the amended complaint seemed to suggest that a general failure in using the base rate in calculating overtime pay could be the reason for the alleged underpayments. *See, e.g., id.* ¶¶ 16, 18, 34.[15]

One unusual aspect of the amended complaint is that the plaintiffs were identified as the individuals listed in Attachment A, but this list includes just 173 names. *See* Att. A to Am. Compl.[16] Keeping in mind that 194 individuals were plaintiffs in the district court, and 192 consent forms were on file, it appears that more than twenty plaintiffs were omitted from the amended complaint.[17] Another unusual aspect of the amended complaint is that although the Tucker Act, 28 U.S.C. § 1491(a)(1), was the reason the case was transferred from the district court, the nonexistent 28 U.S.C. § 1390 is identified as our source of jurisdiction (along with provisions of the money-mandating FLSA). *See* Am. Compl. ¶ 2.[18]

Defendant responded to the complaint with a partial motion to dismiss and a motion for summary judgment. The government contended that the USPS changed its overtime calculation in July 1992, for all employees receiving TCOLA, so as to comply with the *McQuigg* decision. *See* Def.'s Partial Mot. to Dismiss and Mot. for Summ. J. at 8. The government argued that, since plaintiffs allege that USPS employees in Alaska and Hawaii are paid correctly, it cannot be disputed that employees in Puerto Rico are paid overtime correctly, too. *Id.* at 8, 21–23.

After oral argument held on June 12, 2007, and pursuant to RCFC 56(f), the Court denied the government's motion for summary judgment without prejudice. Order (June 12, 2007). Although the discovery period set by the district court may well have expired before the case was transferred, the Court could not consider itself bound by the determinations (including the conditional class certification) of a court lacking jurisdiction. The plaintiffs represented that their expert witness required additional information from the USPS in order to understand how over-

---

**15.** It is not clear from the amended complaint whether the *McQuigg* "formula" that plaintiffs want the USPS to follow is the *McQuigg* treatment of TCOLA, or the concept that overtime pay must be based on one and one-half times the regular rate for overtime hours worked. *See* Am. Compl. ¶¶ 29, 32.

**16.** Actually, there seem to be only 172 names, as Jose Luis Otero seems to again appear twice (Nos. 12 and 84).

**17.** The attached list includes two individuals for whom no consent form was filed: Amalia Lopez (No. 9) and Gloria V. Gonzales (No. 104). Edwin Berrios (No. 23) is presumably Sol Edwin Berrios, to whom a consent form corresponds.

**18.** Presumably, this was a typographical error.

time pay was calculated. *See* Tr. (June 12, 2007) ("Tr.") at 33, 96–97; *see also* Pls.' Opp'n to Def.'s Mot. to Dismiss and Mot. for Summ. J. at 9. Consequently, the plaintiffs were given the opportunity they sought to conduct limited discovery relating to the formula used by the USPS to calculate overtime and other pay, and to the way in which that formula is applied in determining plaintiffs' pay. Order (June 12, 2007); *see also* Tr. at 98–99.

The plaintiffs served upon the government a Rule 30(b)(6) deposition notice on July 3, 2007. Def.'s Status Rep. at 1 (Oct. 12, 2007). While the parties originally represented to the Court that the deposition would be completed by August 22, 2007, Jt. Status Rep. (June 14, 2007), due to scheduling difficulties, the parties agreed on August 31, 2007 that the deposition would be held on November 1, 2007. Def.'s Status Rep. at 1 (Oct. 12, 2007). Plaintiffs' counsel requested on October 5, 2007 that the deposition be postponed, *id.*, and the Court ordered the deposition to take place on or before November 16, 2007. Order at 1 (Oct. 19, 2007). Further delays ensued "because of difficulties on plaintiffs' side, mainly due to scheduling conflicts and budgetary considerations." Pls.' Mot. on Schedule for Def.'s Dep. at 1. Defendant objected to this further extension of the time allowed to take the deposition, claiming the plaintiffs lacked good faith and reiterating its belief that they already possessed "all of the facts that they need to respond" to the summary judgment motion. Def.'s Opp'n to Pls.' Mot. to Ext. the Period for Taking a Dep. at 1.

Despite disappointment with the extensive delay, the Court still wished to ensure that plaintiffs would have as full an opportunity as possible to assemble and process the facts pertinent to their claim before summary judgment proceedings were renewed. Order at 1 (Dec. 14, 2007). The Court therefore held open the special discovery period so that the deposition could be taken on the parties' mutually-agreeable date of January 25, 2008,

placing a deadline of December 28, 2007 for additional written discovery. *Id.* After additional delays—one caused by a dispute over the production of certain documents and spreadsheets requested by the plaintiffs on December 28, 2007, *see* Order (Jan. 23, 2008), and the other by defendant's unopposed request for postponement, *see* Def.'s Unopposed Mot. to Mod. Schedule for Dep.—the deposition of the government's representative finally took place on March 21, 2008.

During the deposition of Jo Ann Mitchell, the USPS Manager for Payroll Accounting, a particular pay period for plaintiff Jorge Rosario was discussed—one that had been scrutinized by both sides' experts. *See* Am. Mot. for Leave to File Sec. Am. Compl. ("Pls.' Mot.") at 3. For this period, the government witness stipulated that the regular rate of pay was $23.545. *Id.* As it is undisputed that Mr. Rosario worked eight hours of overtime during that period, the plaintiffs calculate that he should have received $282.54 in overtime pay under the FLSA overtime rate formula, but the USPS formula allegedly paid him $263.04. *Id.* at 4. On the strength of this stipulation, and the government witness's admission that the same formula is used to calculate overtime pay throughout the USPS system, the plaintiffs have moved for leave to file a second amended complaint. The plaintiffs conclude, "it is with mathematical certainty that plaintiffs can establish that the Postal Service is not paying overtime to postal employees at 1½ times the Regular Rate." *Id.*

The proposed second amended complaint was submitted by the plaintiffs as an attachment to their motion for leave. *See* Att. to Pls.' Mot. ("Sec. Am. Compl."). Curiously, the attached list of plaintiffs, incorporated into the proposed complaint, *see* Sec. Am. Compl. ¶ 4, now includes 199 names.[19] *See* Att. A to Sec. Am. Compl. Of the 192 USPS employees or former employees for whom consent forms were filed, all but two are now found among the list of plaintiffs.[20] In the

---

**19.** The Court notes that the list contains both an "Edwin Berrios," for whom no consent form was filed, and a "Sol Edwin Berrios," who did file written consent. The former is likely a mistaken duplication of the latter.

**20.** The two consenting employees who are missing from the list are Nancy M. Romero and Nancy E. Rosa. Other than Edwin Berrios, it appears that eight purported plaintiffs have not filed consent forms: Arshilla; Amalia Lopez San-

proposed second amended complaint, the underpayment for overtime hours is now alleged to occur "across the whole Postal Service System in the United States and its territories." Sec. Am. Compl. ¶ 1. Although the proposed complaint still discusses the TCOLA and its inclusion in the regular rate calculation, and alleges that TCOLA may not be prorated, *see id.* ¶¶ 11, 13–14, the plaintiffs no longer focus on the treatment of TCOLA as the reason why one and one-half times the regular rate is not paid for overtime hours worked. *Compare id.* ¶¶ 17, 34, *with* Am. Compl. ¶¶ 17, 34.[21] Nor do they allege that the base rate of pay is improperly used in the overtime pay calculation. Instead, the plaintiffs more generally allege that the USPS pays employees for overtime hours worked at less than one and one-half times the regular rate of pay. Sec. Am. Compl. ¶¶ 16–18, 20, 24, 29.

The plaintiffs would also seek, under the proposed complaint, "for this Court to certify a class for all postal employees within the Postal Service who have worked overtime and have not had their overtime compensation computed at least 1½ times the Regular Rate." *Id.* ¶ 19. Although they still note that "there are presently over 4,000 postal employees" working in Puerto Rico, they now estimate that "there are possibly hundreds of thousands of employees" who could potentially join the lawsuit. *Id.* ¶ 22.[22] Accordingly, the claim for back pay in the proposed complaint is now "estimated to be not less that $100,000,000.00," *id.* ¶ 39, up from the $30,000,000 estimate in the current complaint. *See* Am. Compl. ¶ 39. In other respects, the claims for relief are not materially changed.

After the motion for leave was fully briefed, the Court heard oral argument, by telephone, on July 1, 2008. The motion was then taken under submission.

## II. DISCUSSION

The plaintiffs are all current or former employees of the USPS, employed in Puerto Rico, who believe that they have been paid less than the FLSA requires for working overtime. The premise of their initial complaint in this Court appeared to be that the USPS improperly calculated overtime pay using the base rate of pay rather than the regular rate of pay, and thus did not allow the TCOLA to contribute to a higher overtime rate. *See* Am. Compl. ¶¶ 13–18. They now seek to amend the complaint to allege that all USPS employees are underpaid for their overtime, essentially because a deponent representing the defendant conceded that the same formula is used to calculate overtime pay systemwide, and the formula did not yield the amount of overtime pay plaintiffs believe was due one of their number for one pay period.

The government opposes the motion to amend, arguing that it is both futile and unduly prejudicial. According to the defendant, FLSA claims may not be brought in a class action, *see* Def.'s Resp. 2–6, and the claims outlined in the proposed complaint do not clearly identify the grounds upon which they rest. *See* Def.'s Resp. 6–9. During oral argument, the government also contended that expanding the potential class to include all USPS employees who work overtime would dramatically change the size and nature of this case, at an advanced stage of the litigation.

---

tiago; Carlos Ramos Salgado; Felix Santos Ortiz; Gloria W. Gonzalez; Ivan Camacho; Jesus E. Adorno; and Jose Curet Lopez. Three of these resemble other names on the list that do correspond to consent forms (Santos Felix Ortiz, Gloria M. Gonzalez, and Joe Curet Lopez), and might well be erroneous duplications.

21. *But see* Sec. Am. Compl. ¶ 29 (retaining the reference to the decision in *McQuigg* "that the Regular Rate includes the TCOLA payment paid to a given postal employee during the 40–hour workweek").

22. The plaintiffs persist in referencing FRCP 23, rather than our court's RCFC 23, in the class action allegations of their complaint. *See* Sec. Am. Compl. ¶¶ 20–21. They should consult our rules before filing any further complaints in our court, as the declaratory and injunctive relief they request may not be available. *See Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 138 n. 1, 453 F.2d 1272 (1972). The plaintiffs should also correct the typographical error concerning the Court's jurisdiction. *See* Sec. Am. Compl. ¶ 2 (citing the nonexistent 28 U.S.C. § 1390 instead of the Tucker Act, 28 U.S.C. § 1491(a)).

## A. Criteria for Amending a Pleading

Rule 15 provides for the granting of leave to a party to amend or supplement a pleading, and reads in pertinent part:

(a) **Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . .

(c) **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when . . .

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .

RCFC 15. Our court's rules, like the Federal Rules of Civil Procedure they are patterned after, "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Indeed, the analogous FRCP 15 "was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." *United States v. Hougham*, 364 U.S. 310, 316, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960).[23] The Supreme Court subsequently expanded on this point:

If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of

amendment, etc.—the leave sought should, as the rules require, be "freely given." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), *cited in Intrepid v. Pollock*, 907 F.2d 1125, 1128–29 (Fed.Cir. 1990).

Although "the grant of leave to amend the pleadings pursuant to [FRCP] 15(a) is within the discretion of the trial court," *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), "[t]he existence of any one of [the *Foman*] criteria is sufficient to deny a motion to amend, the theory being that the amendment would not be necessary to serve the interests of justice under such circumstances." *Spalding & Son, Inc. v. United States*, 22 Cl.Ct. 678, 680 (1991). Thus, a court should freely permit an amendment when there are insufficiently convincing reasons for denying it. *See Hess v. United States*, 210 Ct.Cl. 483, 491–92, 537 F.2d 457 (1976).

## B. The Plaintiffs' Motion for Leave to Amend

As was described above, the plaintiffs seek to amend their complaint in two respects. First, they want to replace allegations that the USPS calculates overtime pay using the base rate of pay, or without proper consideration of the TCOLA, with the more general allegation that the USPS uses a formula for calculating overtime pay that fails to compensate them at one and one-half times the regular rate for each overtime hour worked. Second, they seek to represent postal employees throughout the entire USPS system, not just employees located in Puerto Rico. The Court will separately analyze each aspect of the proposed amendment.

### 1. The More General Allegations of FLSA Violations are Not Futile

The government argues that an amendment of the complaint to make allegations of FLSA violations more general, and

---

**23.** "RCFC 15(a) is identical to Federal Rule of Civil Procedure 15(a) and case law construing the latter may be used to interpret the former." *Principal Life Ins. Co. v. United States*, 75 Fed.Cl.

32, 33 n. 1 (2007) (citing, *inter alia*, *Te–Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1260 n. 4 (Fed.Cir.1991)).

in particular the proposed complaint's allegation that the USPS calculation of overtime pay is a "violation of its own regulations or policies," Sec. Am. Compl. ¶ 17, shows that plaintiffs "are still not able to state the basis for their claims." Def.'s Resp. at 6. The defendant contends it would be "impossible" to respond to such a complaint, which "does not identify what regulations have allegedly been violated and is unclear as to the nature of the claims asserted." *Id.* at 9. The government suggests that the standard for stating a claim upon which relief can be granted, as recently enunciated in *Bell Atl. Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007), is not met by the proposed complaint. *See* Def.'s Resp. at 8–9.

The Court does not find these arguments sufficiently convincing to reject plaintiffs' motion for leave to amend their complaint. While the proposed complaint, it is true, does not identify the USPS "regulations or policies" which are allegedly violated, it is clear in context that any such "regulations or policies" would be those relating to the entitlement to overtime pay at the rate of one and one-half times the regular rate. *See* Sec. Am. Compl. ¶ 17. Indeed, although reference to it is omitted from the proposed complaint, the plaintiffs cite in their motion Article 444.1 of the USPS Employee Labor Manual, which states that the FLSA requires the USPS to pay overtime " 'at one and one-half times the employee's regular rate for all hours of actual work in excess of 40 in any FLSA work week.' " Pls.' Mot. at 2 (emphasis removed).

Moreover, the proposed amendment would not be problematic even were the regulations or policies in question ones which instead relate to an employee's independent entitlement to some premium pay for non-overtime hours worked, in support of a marginal analysis argument similar to the approach followed in *McQuigg* regarding the TCOLA. *See McQuigg,* 950 F.2d at 596–97. The current complaint, after all, in part explains the underpayment problem as rooted in the use of the base rate of pay, rather than the regular rate, to calculate the overtime pay

earned by USPS employees. *See* Am. Compl. ¶¶ 16, 18, 34. It has thus been necessary from the outset for the government to take into account the varieties of premiums which factor into the regular rate, and a finite set of regulations or policies must relate to these. In any event, regardless of how any regulations or policies affect the regular rate calculation, the ultimate basis for the relief sought by the plaintiffs is the money mandate of the FLSA.

Regarding the application of *Twombly,* courts should be careful not to exaggerate its importance. Other than the rejection of the "no set of facts" language from *Conley v. Gibson, see Twombly,* 127 S.Ct. at 1968–69 (discussing *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99), the opinion merely reiterates the established approach to determining whether a claim for relief has been stated. *See id.* at 1964–65. Its novelty, it seems, is in applying this approach to a claim based on section 1 of the Sherman Act, in which *how* defendants acted, and not the result of the action, determines whether the law was violated. *See id.* at 1965–66. Thus, conclusory allegations of a conspiracy, accomplished by an illegal agreement, will not do absent enough factual allegations to at least "suggest" the making of such an agreement. While it is true that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 1964–65 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)), the proposed complaint satisfies this obligation. Perhaps if plaintiffs merely stated that they are employees of the United States and are owed back pay, without more, the defendant would have a point. But here they identify the agency for which they work, their entitlement to certain pay under the FLSA, and their failure to receive it. *See, e.g.,* Sec. Am. Compl. ¶¶ 1, 4, 8, 15–18. Unlike the conspiracy alleged in *Twombly,* the plaintiffs' claims, in the main, do not turn on the manner in which defendant acted, but on the bottom-line impact on their pay received.[24]

---

**24.** Of course, the question of willfulness for pur- poses of determining the applicable statute of

The plaintiffs seem to have replaced specific allegations of why the USPS failed to pay them the right amount of overtime pay, with the more general allegation that this failure has occurred. Whether this alleged underpayment is due to the use of the base rate in a calculation, or due to the prorating of TCOLA or other premium pay, or due to some unseen machinations inside the payroll black box is not specified in the proposed complaint. The defendant contends that it cannot tell if the plaintiffs are making the same argument, previously rejected by courts, that it is improper to add the overtime hours, multiplied by just one-half the regular rate, to the compensation used to calculate the regular rate to satisfy the overtime pay requirement of the FLSA. Def.'s Resp. at 8 (citing *Bay Ridge*, 334 U.S. at 476–77 & 476 n. 34, 68 S.Ct. 1186, and *Zumerling*, 769 F.2d at 747).[25] But even if the plaintiffs are trying to challenge this methodology, this does not render futile the proposed amended complaint. Plaintiffs can still attempt to distinguish past precedents—perhaps because they involved regulations of OPM rather than the DOL, or because they applied DOL regulations in the context of private employers, who are less likely than the federal government to be subject to an independent mandate requiring certain pay for non-overtime hours. In other words, the tautology described in the background section of the opinion may be tested. And even if binding precedent were not distinguishable, plaintiffs would still have the right to take an appeal to the Federal Circuit and request en banc review to try to overturn such precedent.

As has been explained, "[a] finding of futility in this procedural context requires the Court to determine that the proposed amendment is subject to dismissal or so wholly and patently lacking in merit that it cannot possibly succeed." *Centech Group, Inc. v. United States*, 78 Fed.Cl. 658, 661 (2007). At this juncture, "courts do not engage in an extensive analysis of the merits of the proposed amendments," but instead "simply decide whether a party's proposed amendment is facially meritless and frivolous." *St. Paul Fire & Marine Ins. Co. v. United States*, 31 Fed.Cl. 151, 155 (1994). The proposed amendments which more generally describe the alleged failure of the USPS to pay the requisite amounts for overtime do not fail this test. Accordingly, the plaintiffs' motion is GRANTED–IN–PART, and leave is granted for the filing of a second amended complaint incorporating these more general allegations.[26]

*2. Expanding the Potential Class of Plaintiffs Would be Unduly Prejudicial*

 The second respect in which the proposed complaint differs from the current complaint is that the plaintiffs would seek to certify a class of employees located throughout the USPS, rather than just those located in Puerto Rico. *See, e.g.*, Sec. Am. Compl. ¶¶ 1, 16–17, 19, 22, 36. The plaintiffs acknowledge that this is "the only significant difference" between the two complaints. Pls.' Reply at 3. The government contends that such an amendment would be futile, arguing that the special provisions of the FLSA do not allow for class action lawsuits. Def.'s Resp. at 2–6. It also argues that broadening the potential class of plaintiffs would be unduly prejudicial.

The Court does not interpret the FLSA as somehow preempting or displacing our procedures for class actions. Several courts, it

---

limitations period involves the manner in which the defendant acted. *See* 29 U.S.C. § 255(a). The plaintiffs have included a separate factual allegation of willful conduct. Sec. Am. Compl. ¶ 29.

**25.** Based on the example of the Rosario pay period, cited in the plaintiffs' motion, it appears that this *is* the argument the plaintiffs are attempting to make. The plaintiffs claim that Mr. Rosario was paid $19.50 less than the FLSA required for the period in question, for the eight hours of overtime worked. *See* Pls.' Mot. at 4. This is exactly the result of multiplying the contribution of night differential and Sunday premium to the regular rate ($78.03 plus $38.96, divided by 48) times the number of overtime hours worked in that pay period. *See* Ex. 6 to Pls.' Opp. to Def.'s Partial Mot. to Dismiss and Mot. for Summ. J. at 8 (Docket No. 41-2, at 62) (showing compensation breakdown for Jorge L. Rosario, second week of pay period 06/2000).

**26.** Plaintiffs' counsel should also use this opportunity to clarify the identities of the plaintiffs who are participating in this lawsuit.

is true, have found actions under the FLSA to be incompatible with an *opt-out* class action, as 29 U.S.C. § 216(b) mandates that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *See, e.g., Cameron–Grant v. Maxim Healthcare Svcs., Inc.,* 347 F.3d 1240, 1248 (11th Cir.2003) (finding that section 216(b) "prohibit[s] what precisely is advanced under [FRCP] 23"); *LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 288 (5th Cir.1975) (identifying the opt-out feature of classes under FRCP 23 as "a fundamental, irreconcilable difference" between that rule and section 216(b)). As the Federal Circuit has noted, and the government cites, *see* Defs.' Resp. at 3, the purpose of the written consent requirement was "to prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of the lawsuit." *United States v. Cook,* 795 F.2d 987, 993 (Fed.Cir.1986) (quoting *Arrington v. Nat'l Broad. Co.,* 531 F.Supp. 498, 501 (D.D.C.1982)). Obviously, the opt-in procedure for class actions under RCFC 23 ensures that class members have "real involvement in" and "knowledge of the lawsuit."

Because our rules provide for opt-in, not opt-out, class actions, the "irreconcilable difference" between class actions and collective actions under the FLSA is simply not present in our court.[27] There appears to be no reason why RCFC 23 may not be used to advance FLSA claims. Of course, to certify a class the plaintiffs would have to meet the requirements of RCFC 23(a) and 23(b), in addition to demonstrating that they are "sim-ilarly situated" to potential class members under 29 U.S.C. § 216(b). But the latter condition, and the other differences between FLSA collective actions and normal RCFC 23 procedures identified by the government, *see* Def.'s Resp. at 4–6, do not make attempts to certify a class in these circumstances futile.

One of these conditions, however, is relevant to the Court's exercise of discretion in determining whether to permit the amendment broadening the potential class. As the government notes, 29 U.S.C. § 256 provides that "in the case of a collective or class action instituted under the [FLSA]," the action with regard to the claim of any individual claimant "shall be considered to be commenced" on the date in which his written consent is filed in the court. Thus, the normal rule that the claims of class members relate back to the date the complaint was filed would not seem to apply.[28] *Cf. Curry v. United States,* 81 Fed.Cl. 328 n. 7 (2008) (utilizing the date, six years before the class action complaint was filed in district court, to define the class to be certified). Thus, any USPS employees who might opt into the lawsuit if a class were certified would not be able to benefit from the May 24, 2002 filing date of the complaint in the district court. It would make no difference to them if their claims were included in an amended complaint in this case, or in a new, separate lawsuit filed in our court.[29]

On the other hand, a compelling case is made that the government would be unduly prejudiced were the class to be broadened to cover potentially all USPS employees. Generally speaking, "[u]ndue prejudice may be found when an amended pleading would

---

27. The Court notes that our rules were changed in May 2002, to explicitly provide for opt-in class actions. *See Revised Rules,* 51 Fed.Cl. xiii, xlvi-xlviii (2002). The defendant cites an opinion from our court predating the rules change, which contained dicta stating that a 29 U.S.C. § 216(b) action was "mutually exclusive of the class action remedy in FRCP 23, or" our version of the rule at that time. *Canfield v. United States,* 14 Cl.Ct. 687, 689 (1988). Not only has this dicta been superseded by RCFC 23, but it expressly rested on the section 216(b) requirement that "class members [are] only those persons who affirmatively 'opt in.' " *Id.*

28. *But see Ewer v. United States,* 63 Fed.Cl. 396, 400 (2005) (finding that the FLSA claims of plaintiffs joined under RCFC 20(a) related back to the date the initial complaint was filed, pursuant to RCFC 15(c)(2) and in the face of no government opposition).

29. Moreover, plaintiffs' counsel conceded during argument that he had yet to obtain signed consent forms from any USPS employees located outside of Puerto Rico.

cause unfair surprise to the opposing party, unreasonably broaden the issues, or require additional discovery." *Cooke v. United States,* 79 Fed.Cl. 741, 742–43 (2007) (citing, *inter alia, Parish v. Frazier,* 195 F.3d 761, 763–64 (5th Cir.1999) and *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 146 F.3d 983, 991 (D.C.Cir.1998)). A court should consider whether newly-proposed claims, "if allowed to proceed, would undoubtedly set off a new wave of motions, if not require further discovery and a trial (both apparently involving a new set of operative facts.)." *Principal Life Ins. Co. v. United States,* 75 Fed.Cl. 32, 33 (2007). Here, the defendant had been proceeding on the assumption that the plaintiffs would be confined to USPS employees located in Puerto Rico. Discovery and other investigations by the defendant focused on the payroll records of the initial plaintiffs, all of whom resided in Puerto Rico. The allegations in the complaint were that USPS employees in Puerto Rico were specifically deprived of entitlements that other USPS employees received. *See, e.g.,* Am. Compl. 1, 16–17.

After several years of litigation, and years of discovery, centered on the manner in which employees in Puerto Rico were paid overtime pay, this aspect of the amendment sought by the plaintiffs would expand the case from one involving potentially thousands of claims to one involving "possibly hundreds of thousands of employees." Sec. Am. Compl. ¶ 22. Although the plaintiffs contend that the same formula is used to calculate overtime pay for all USPS employees, they do not have among their ranks any employees residing outside of Puerto Rico, and thus are not in a position to know firsthand whether the underpayment they allege is based on a factor in the formula that applies to all employees. At this advanced stage of the proceedings, after one dispositive motion has been sidestepped under RCFC 56(f) and another one is imminent, it would unduly prejudice defendant to allow such a dramatic expansion of this particular case. Moreover, in light of the special claim commencement provision of 29 U.S.C. § 256, anything that plaintiffs could have accomplished on behalf of class members residing outside of Puerto Rico can be achieved through the filing of a new complaint in our court, directly related to this one pursuant to RCFC 40.2(a). Because the claims of individuals date from the filing of written consents, not the date of the complaint, there is no disadvantage to the potential members of the nationwide class if they were to proceed under a newly-filed case, with the virtue that this particular case is not delayed further. *See Roe v. CC Svcs., Inc.,* No. 04–CV–4051–DRH, 2005 WL 2085293, at *2, 2005 U.S. Dist. LEXIS 36381, at *5–6 (S.D.Ill.2005) (describing the superior approach of requiring a new, related case to be filed, rather than allowing an amendment that would add new plaintiff classes to an FLSA action). Accordingly, to the extent that the plaintiffs seek to amend the complaint to broaden the potential class to include USPS employees located outside of Puerto Rico, the plaintiffs' motion is DENIED–IN–PART.

## III. CONCLUSION

For the foregoing reasons, the plaintiffs' motion for leave to file a second amended complaint is **GRANTED–IN–PART** and **DENIED–IN–PART.** The plaintiffs are granted leave to file a second amended complaint containing the more general allegations that the USPS has violated the FLSA by paying for overtime work at less than one and one-half times the regular rate of pay. They are not granted leave to broaden the potential class of plaintiffs to include USPS employees outside of Puerto Rico. The plaintiffs shall file their second amended complaint within seven days of the date of this order.

**IT IS SO ORDERED.**